Argued 3 October, decided 30 October, 1906.

## OWINGS *v.* TURNER.

87 Pac. 160.

Next Friend as Party—Defect of Want of Capacity to Sue—Demurrer—Waiver of Objection.

1. The next friend of an incompetent litigant is a "party" to the litigation, and if the incompetent has no capacity to sue, for any reason, the objection must be taken by demurrer, under Section 68, B. & C. Comp., or it will be considered waived, under Section 72.

Depositions—Effect of Misdescribing Special Referee.

2. Where depositions have been taken before a specified referee, they should not be suppressed because he was a different official than he was supposed to be, as, where he was described as a notary public in the order of appointment, though he was in fact a United States commissioner.

Evidence of Mental Capacity to Execute Deed.

3. The evidence shows that E. Owings was mentally competent to execute a valid deed on August 20, 1904.

FRAUD—UNDUE INFLUENCE—EVIDENCE—BURDEN OF PROOF.

4. The evidence of the plaintiff compels the inference that the grantee in the deed sought to be canceled unduly influenced the grantor to execute it, thereby casting on the grantee the burden of showing that the grantor understood what he was about to do, and that his consent to the deed was not obtained through taking advantage of his depressed mental and physical condition.

SUFFICIENCY OF EVIDENCE.

5. The evidence for defendant is not sufficient to overcome the inference created by the plaintiff's case that the deed in question was obtained through undue influence.

CANCELLATION OF INSTRUMENTS—RESTORING CONDITIONS—TENDER.

6. In a suit to set aside a conveyance for fraud and undue influence, it appeared that plaintiff had received, in consideration of the conveyance, deeds to two tracts of land. Plaintiff was mentally deficient, and led his attorney to believe that he had executed to defendant a deed to one of the tracts, so that a deed to the other tract was the only deed tendered before the suit was commenced. At the trial, when it was ascertained that no deed had been given to the former tract, a deed thereto was executed by plaintiff and tendered. *Held,* that the tender was sufficient.

From Marion: WM. GALLOWAY, Judge.

Suit to cancel a deed, resulting in a decree for plaintiff, from which defendant appeals.                              AFFIRMED.

For appellant there was a brief over the name of *Bonham & Martin,* with an oral argument by *Mr. Carey Fuller Martin.*

For respondent there was a brief with oral arguments by *Mr. Henry Johnson Bigger* and *Mr. Charles William Corby.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. This is a suit by E. Owings by his next friend, J. H. Wilson, against Henry H. Turner, to set aside a deed, the execution of which is alleged to have been secured in consequence of the plaintiff's mental weakness, and the defendant's undue influence and fraud. The cause was tried and a decree rendered as prayed for in the complaint, from which the defendant appeals, his counsel contending that, if the plaintiff was unable to transact business by reason of his alleged infirmity, he should have beeen represented by a general guardian, or by some person specially appointed for that purpose, and that Wilson was unauthorized to appear for him in the capacity stated or to institute the suit in his behalf, and hence error was committed in overruling the demurrer to the complaint. The complaint was challenged on the ground that it did not state facts sufficient

to constitute a cause of suit. The statute permits a defendant to demur to a complaint:

"When it appears on the face thereof, either— * *·

(2) That the plaintiff has not legal capacity to sue; or * *

(4) That there is a defect of parties plaintiff: B. & C. Comp. § 68.

Further statute provisions are:

"The demurrer shall distinctly specify the grounds of objection to the complaint:" B. & C. Comp. § 69.

"If no objection be taken either by demurrer or answer the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of suit or action:" B. & C. Comp. § 72.

"Ordinarily," says Mr. Justice WOLVERTON, in *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 799), "the objection arising from a defect of parties should be taken by demurrer. if it appears from the face of the complaint, otherwise by answer, and if by neither, it is deemed waived." The incapacity of a plaintiff to sue where, as in the case at bar, he is represented by a next friend, who is regarded as a party, within the meaning of the statute relating to the conduct of suits (14 Enc. Pl. & Pr. 1000), is an imperfection which, if it exists. is apparent on the face of the complaint, and as the demurrer interposed was not based on that ground, the objection now insisted upon was waived.

2. It is maintained by defendant's counsel that an error was committed in overruling their motion to suppress certain depositions. The court, on plaintiff's motion and by consent of the defendant, appointed C. H. Holden, who is stated in the order to be a notary public, as special referee to take, on behalf of the plaintiff, the testimony of James Young and M. D. Scott. Holden took the testimony, and in the certificate attached to their depositions he wrote after his name the phrase, "Special Referee and U. S. Commissioner for Oregon." It is argued that he was not a notary public, and, for this reason, the evidence should have been excluded. A special referee may be appointed in suits in equity to take the testimony of witnesses who, as in the case at bar, reside more than 20 miles from the place of

holding court: B. & C. Comp. § 827. The parties hereto having stipulated that Holden should be appointed, his selection as special referee was evidently based on his well-known qualification to discharge the duty intrusted to him, and not because he was supposed to have been commissioned a notary public. The selection having been made in pursuance of such agreement, the testimony, as taken and certified to by Holden, was entitled to be read in evidence.

3. Considering the case on its merits, the testimony shows that on August 20, 1904, the plaintiff was the owner of 10 acres of land in Marion County, near Chemawa, which on that day he conveyed to the defendant, receiving a deed for 30 acres of land in Lane County which he had never seen, and $125 in money, of which sum the defendant paid Chris Boss, a real estate broker, $25, as his commission for negotiating the sale of plaintiff's land. A few days thereafter the defendant paid the plaintiff $5 for his household goods, tools, hay, etc., taking a receipt therefor. The plaintiff examined the land in Lane County which had been conveyed to him, and, being dissatisfied therewith, he so informed the defendant, who executed to him a deed for 7.31 acres of land near the Reform School, on which the plaintiff erected a small cabin, and made other permanent improvements. This suit was thereafter instituted for the purpose indicated, and also to recover the value of the personal property specified, which is alleged to have been reasonably worth the sum of $153.40. Dr. W. A. Cusick, a reputable physician, who has made a study of mental diseases, and treated persons afflicted therewith, testified that he had examined Owings, who is about 48 years old and unmarried, and found him lacking in discretion and understanding; that, in his opinion, the plaintiff had been more or less defective all his life, and, as he grows older, his infirmity will probably become aggravated, resulting in a total breakdown, so that he will ultimately have to be taken care of. In referring to the plaintiff's condition at the time he made the examination, the witness further said:

"His appearance was a telltale appearance. There was pro-

(48th Or.—30)

gressive emaciation, or at least a wasting away of the physical powers which proclaimed broadcast his imperfect physical health."

The plaintiff's counsel, complying with the statutory permission (B. & C. Comp. § 718, subd. 10), called nonexpert witnesses, who were intimately acquainted with Owings, and who severally expressed an opinion as to his mental condition at the time he executed his deed, giving the reason for the belief so entertained. An examination of the testimony on this branch of the case convinces us that Owings is not *non compos mentis,* but is and was, August 20, 1904, afflicted with mental weakness which his conversation, general appearance and conduct betray. He possesses, however, sufficient mental capacity fully to appreciate and understand the nature and effect of all his transactions, and was and is competent to make a binding contract, and to execute a valid deed: *Carnagie* v. *Diven,* 31 Or. 366 (49 Pac. 891); *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Dean* v. *Dean,* 42 Or. 290 (70 Pac. 1039).

4. This brings us to a consideration of the question whether or not Owings, in consequence of his intellectual impairment, was induced by the defendant to enter into a contract, whereby the latter secured an improper advantage by unfair means, which amount to fraud, deceit or imposition. Owings, as a witness in his own behalf, testified, in effect, that, his health having failed while living on the 10 acres referred to, he concluded to sell or trade the premises and go South, thinking the change of climate would be beneficial to him; that, with this idea in view, he came to Salem, August 20, 1904, where he met Chris Boss, a real estate broker, who took him to Turner's office, where the defendant informed him that he owned 30 acres of well-watered garden land in Lane County, which he would exchange for the plaintiff's tract; that a trade was finally consummated by an exchange of deeds, though the witness had never seen the land offered, the defendant paying him the further consideration of $105, and taking a bill of sale of certain personal property; that the plaintiff thereafter went to Lane County, examined the land referred to, and found it

rocky, without water, and situated on the side of a mountain; that he immediately returned and notified the defendant of his dissatisfaction, who informed him, for the first time, that he owned 7.31 acres of land near the Reform School which he would exchange for the 30 acres, and threatened that, if he commenced a suit to set aside his deed, he would prolong the litigation until the expenses of the trial would leave nothing for him; that the witness, hiring a horse and carriage, took the defendant to the land which he offered to trade, and they perfected a bargain in relation thereto, whereby the plaintiff paid on account of the land the sum of $12, and gave the defendant $10 for drawing the deed therefor; and that he erected a small house, and made other improvements on the premises.

The defendant, as a witness in his own behalf, testified that the agreement entered into required him to execute deeds for the lands mentioned in Lane and Marion counties, and to pay the further consideration of $130, in exchange for the plaintiff's deed; that, in examining the title to the plaintiff's land, he discovered a defect therein which could only be corrected by securing quitclaim deeds from former owners of the premises, whereupon it was stipulated that the land in Lane County only should be conveyed, and that the legal title to the land near the Reform School should be retained until such defect was remedied. The defendant denied that he made any representations to the plaintiff concerning the location or kind of land mentioned in Lane County, telling Owings that he had never seen it, and advising him to examine the premises before he executed his deed; but he declined to do so. He also denied that the plaintiff paid him any sum as a consideration for the land near the Reform School, or gave him $10 for executing a deed therefor; but admits that Owings paid the livery bill for the horse and carriage used in going to the land. Boss, as the defendant's witness, corroborates Turner's testimony in every particular, relating to the terms of the contract entered into when the exchange of lands was effected. Notwithstanding such confirmatory testimony, we think the inadequacy of the consideration, hereinafter referred to, when considered in connection with the

plaintiff's mental weakness, which his physical condition denoted, together with certain facts and circumstances associated with the whole transaction, sufficient to create an inference that the defendant exerted an undue influence over the plaintiff in scuring his deed, which prevented him from judging accurately and acting independently in the matter: *Archer* v. *Lapp,* 12 Or. 196 (6 Pac. 672). This deduction, which the law directs in such cases, imposed on the defendant the burden of showing that the plaintiff acted knowingly, intentionally and deliberately, with full knowledge of the nature and effects of his acts, and that his consent to the execution of his deed was not obtained by any advantage taken of his condition: 2 Pomeroy, Equity, 2 ed. § 928.

5. This inference has not, in our opinion, been overcome by the corroborating testimony mentioned. It conclusively appears that the land conveyed by the plaintiff was, at the time the deed was executed, reasonably worth the sum of $1,200. The court found that the value of the personal property transferred by him to deefndant was $50, which conclusion of fact we adopt. The depositions of the witnesses who live near the land in Lane County conveyed to the plaintiff, and who know the character thereof, are to the effect that the premises have been burned over, destroying the timber; that the soil is rocky, the surface too steep to be plowed; and that the land is wholly valueless. A witness for the defendant, however, who had hunted deer on this land, estimated it to be worth from $6 to $10 an acre. In attempting to harmonize this testimony, if it be assumed that this land is worth $6 an acre, the lowest estimate placed thereon by the defendant's witness, the value thereof is $180, though the trial court found it to be reasonably worth only $75. The witnesses who have recently seen the land near the Reform School testified that it is gravelly, subject to overflow, and that about three acres thereof having been plowed, the alluvial soil thereon had been washed away, so that the whole tract was of no greater value than from $15 to $25 an acre, at which latter sum the premises are worth $182.75, though about six years prior to the trial the land had been

sold for $60 an acre. The answer admits that the value of the permanent improvements which the plaintiff placed on the land near the Reform School is $25, so that the entire consideration which he received for his real and personal property and improvements, valued at $1,275, was the land in Lane and Marion counties, of the reasonable value of $180 and $182.75, respectively, and $130 in money, or $495.75. On account of the sum of money so received, the plaintiff transferred personal property worth $50, and made improvements admitted to be of the value of $25, and was required, as a condition precedent to the granting of the relief sought, to pay the further sum of $50, which accounting we approve.

6. When this suit was instituted the plaintiff's counsel understood from their client that he had executed to the defendant a deed to the land in Lane County when he had only left the deed with him. Based on such misconception, a deed to the land near the Reform School only was tendered before the suit was commenced. At the trial, however, when the fact was ascertained, a deed to the land in Lane County was executed by the plaintiff and tendered. In view of Owings' mental condition and of the reasonable misunderstanding of his counsel resulting from his infirmity, the tender was sufficient.

Believing that the plaintiff is competent to execute to the defendant valid deeds of the real property which he received, and that a reconveyance of the premises will place him *in statu quo* upon the payment of $50, the decree is affirmed.

AFFIRMED.