Argued June 23, affirmed July 28, 1925.

## J. E. PULKRABEK v. BANKERS' MORTGAGE CORPORATION.

(238 Pac. 347.)

**Parties—That Plaintiff is Real Party in Interest Requires Only Ordinary Proof.**

1. That plaintiff is real party in interest, within requirements of Sections 27, 29, Or. L., may be proved in a judicial proceeding as any other fact, and no higher degree of proof is necessary.

**Parties—Disclaimers of Interest Admissible to Show That Plaintiff was Real Party in Interest.**

2. Although, where contract had been made in name of plaintiff and sons, disclaimers of sons as to interest in contract could not operate to assign any interest they might have, such disclaimers *held* admissible in support of plaintiff's testimony that he was only party in interest, and to protect defendant against possible subsequent claims by disclaimants.

**Parties—Defect of Parties Plaintiff Appearing on Face of Complaint Waived, Unless Taken Advantage of by Demurrer.**

3. Where contract, made out in name of plaintiff and sons, was attached to complaint, failure to take advantage of defect of party plaintiffs was waiver in absence of demurrer, and objection could not be taken by answer, in view of Sections 68, 71, 72, Or. L.

---

1. See 20 R. C. L. 665.
3. See 20 R. C. L. 705.

**Sales—Time of Passage of Title Under Contract for Sale of Specific Goods Depends on Intention of Parties if Determinable.**

4. In view of Sections 8181 and 8182, Or. L., time when title to specific goods passes under contract for sale depends upon intention of parties, if such intention can be collected from terms of contract itself, the conduct of the parties, usages of trade or facts and circumstances of case, but where not so determinable, rules provided by statute are controlling.

**Sales—Ordinarily, Bill of Sale Does not Pass Title Without Delivery.**

5. Ordinarily, bill of sale does not pass title without delivery.

**Contracts—Two Written Instruments, Executed on Successive Days, Construed Together as One Contract.**

6. Two written instruments relating to sale of specific goods, and which were parts of same transaction, would be construed together for purpose of showing true contract, notwithstanding they were executed on successive days.

**Sales—Contract for Sale of Factory Equipment Held not to Pass Title Immediately.**

7. Where indivisible contract for sale of machinery and equipment in factory required seller to dismantle and remove it and load it on cars and ship it to entitle him to payment of gross sum stipulated, title *held* not to have passed on execution of contract, in view of Section 8182, Or. L.

**Sales—Stipulation That Failure of Seller to Fulfill Obligation Would Entitle Buyer to Recover Advance Payment of Purchase Price Held not to Confine Recovery to Such Payment.**

8. Where contract for sale of factory machinery provided that seller was to furnish certificate of a test of one of boilers, and that buyer could recover advanced purchase money if test was unsatisfactory, *held* not to limit buyer's recovery to such advances, where, by reason of seller's failure to furnish certificate within reasonable time, buyer had incurred extra expenses.

**Sales—Buyer Entitled to Recover Advances on Sale Price, and Damages, Without Tender of Goods Received.**

9. Where contract provided for sale of factory machinery within certain time, and required seller to dismantle it and ship it, seller's failure to ship entire amount within time specified *held* to entitle buyer to repudiate contract, and refuse to regard the property already shipped as his own, and to recover advances made on sale price as well as damages incurred in reliance on contract, without tendering property received to seller.

---

See (1) 23 C. J. 12.    (2) 30 Cyc. 48.    (3) 31 Cyc. 737.    (4) 35 Cyc. 277, 278.    (5) 35 Cyc. 336.    (6) 13 C. J. 529.    (7) 35 Cyc. 282. (8) 35 Cyc. 633.    (9) 35 Cyc. 617, 621 (Anno.).

4.    See 24 R. C. L. 15.
5.    See 24 R. C. L. 17.
6.    See 6 R. C. L. 851.
7.    See 24 R. C. L. 31.
9.    See 24 R. C. L. 272.

From Multnomah: W. N. Gatens, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Winter & Maguire,* with an oral argument by *Mr. John P. Winter.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes, Mr. John M. Pipes* and *Mr. Henry L. Lyons,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. Lyons.*

RAND, J.—This is an action upon a contract for the sale by defendant to plaintiff and Pulkrabek Brothers of certain sawmill machinery and equipment. This contract is in writing and is evidenced by two papers, one of which is a bill of sale purporting to sell, assign and transfer said machinery and equipment, and the other is an agreement stipulating the time and manner in which delivery of said chattels shall be made, and also providing for the termination of the contract in case one of the boilers mentioned in the contract and bill of sale should not stand the test stipulated for in the contract. In part and so far as material, the bill of sale and contract read as follows:

"Know All Men By These Presents:
"That the Bankers Mortgage Corporation, of Portland, Oregon, the party of the first part, for and in consideration of the sum of Eight Thousand Dollars ($8,000.00), to be paid in the following manner: Two Thousand Dollars ($2,000.00), of which said sum has been paid in cash, the receipt whereof is hereby acknowledged, and the remainder of Six Thousand Dollars ($6,000.00) to be paid by certified check made

out to the Bankers Mortgage Corporation and placed in escrow with the Ladd & Tilton Bank of Portland, Oregon, to be turned over to said Bankers Mortgage Corporation immediately upon the arrival of the machinery at White Salmon, Washington, to it in hand paid by Pulkrabek Brothers and J. E. Pulkrabek, of the same place, the parties of the second part, does by these presents grant, bargain, sell, convey, and deliver unto the said parties of the second part all of the following described personal property, in its present location and condition, situated near Sherwood, Oregon, as follows: * *

"It is intended by this bill of sale to convey to the Pulkrabek Brothers and J. E. Pulkrabek all the tools, machinery and equipment now owned by the Bankers Mortgage Corporation at the Tappendorf Mill, near Sherwood, Oregon, except one pony sawmill and engine used therewith, 1 large planer, lumber, buildings and logging equipment. * *

"This Agreement, made and entered into this 5th day of January, 1920, by and between the Bankers Mortgage Corporation, a corporation, incorporated under the laws of the State of Oregon, with its principal place of business in the City of Portland, Oregon, party of the first part and Pulkrabek Brothers and J. E. Pulkrabek of the same place, parties of the second part, Witnesseth:

"That for and in consideration of the sum of one dollar ($1.00), and other good and valuable considerations, the party of the first part hereby agrees to employ James Hall and others to carefully dismantle the Tappendorf Mill, situate near Sherwood, Oregon, and the first party further agrees to have same hauled and loaded on cars by April 1, 1920, to be shipped to White Salmon, Washington, freight prepaid, in a like and similar condition and state of repair as to its present condition, and also agrees to have the large boiler tested to 150 pounds pressure and furnish to said Pulkrabek Brothers a certificate of test. In the event said boiler does not stand said Hartford test the first party is to pay the second

party two thousand dollars and the sale is null and void, and agrees to use reasonable care and discretion in handling of the machinery and equipment, the dismantling of the mill and to be commenced by James Hall at once.''

Both of these papers were executed by the defendant corporation and by plaintiff, who, in addition to signing his own name thereto, signed the name of Pulkrabek Brothers to each of said instruments. At the time this contract was entered into plaintiff intended to construct and operate a sawmill at White Salmon, Washington, and was purchasing the machinery and equipment for use in said contemplated mill and intended that his two sons should be associated with him in the operation thereof. To that end he executed the contract and bill of sale not only for himself but also for his sons, designating them under the name of Pulkrabek Brothers. Neither of them, however, advanced any money for the purchase of said chattels or acquired any interest in the contract, and at the trial there was admitted in evidence over defendant's objection and exception written disclaimers signed by the sons disclaiming upon the part of each any interest in the contract or in the damages recoverable for defendant's alleged breach thereof.

Defendant knew, when entering into the contract, that plaintiff was purchasing the machinery and equipment for use in the operation of his proposed mill at White Salmon, Washington, and with such knowledge entered into the contract for the sale thereof to plaintiff. Plaintiff performed the contract upon his part by paying defendant the sum of $2,000 and by delivering to the Ladd & Tilton Bank a certified check for $6,000 payable to the order of the de-

fendant. Defendant failed to perform its part of the contract in that only a part of the chattels were loaded on the cars within the time stipulated, and no certificate of a test of the boiler, as required by the contract, was ever furnished to plaintiff. Because of such failure upon defendant's part plaintiff rejected such of the chattels as had been delivered to him and demanded of the bank the return of the certified check. The bank refused to deliver the check to plaintiff, and thereupon plaintiff, without joining his sons as parties plaintiff, commenced this action as sole plaintiff, seeking to recover as general damages the $8,000 he had parted with, and also $10,000 as special damages for loss of profits in the operation of the mill by reason of his inability to get the equipment within the stipulated time, and for expenditures made in reliance upon defendant's performance of the contract. He was compelled at the trial, however, to elect whether to prosecute his claim for loss of profits or for expenditures made in reliance upon defendant's performance of the contract, and elected to enforce his claim for the alleged expenditures. A verdict and judgment was rendered in favor of plaintiff for the sum of $9,619.21, from which judgment the defendant appealed.

1, 2. Defendant's first contention is that Pulkrabek Brothers were indispensable parties to the prosecution of this action and that because of their nonjoinder in the action there was a defect of parties plaintiff which entitles the defendant to a reversal of the judgment and a dismissal of the action.

At common law every action upon contract was required to be brought by the contracting party, if living, or by his legal representative, if dead, but this rule has never obtained in this state. The Code pro-

vides that every action must be prosecuted in the name of the real party in interest, except actions brought by an executor or administrator, a trustee of an express trust, or a person authorized by statute to sue; in which actions it is unnecessary to join as plaintiff the person for whose benefit the action is prosecuted: Sections 27 and 29, Or. L. Under this statute the action must be prosecuted in the name of the real party in interest, and the real party in interest is the party who is to be benefited or injured by the judgment in the case. In an action for breach of contract the party who will be directly benefited by the successful prosecution of the action and who will be entitled to receive the damages recovered, is the proper party to be made plaintiff in the action. If, in the trial of a cause, the defense can show that the plaintiff in the action is not the real party in interest the action must fail, unless it is one that is brought by an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute to sue. The fact that the plaintiff is the real party in interest may be proved in a judicial proceeding as any other fact is proven, and no higher degree of proof is necessary to establish that fact than is required to establish any other fact in the case: *Barbre* v. *Goodale,* 28 Or. 465, 473 (43 Pac. 378).

Here it was both pleaded and proved that the whole consideration for the contract passed from plaintiff, and that although the contract was executed in the name of Pulkrabek Brothers as well as in that of plaintiff, Pulkrabek Brothers had no interest in the result of the litigation. This was established by the testimony of plaintiff and without the aid of the written disclaimers. Defendant objected to the admis-

115 Or.—25

sion of the disclaimers upon the ground that they would not constitute an assignment of any interest of the disclaimants in the contract.   These disclaimers were admissible in support of plaintiff's testimony that he was the sole party in interest.   While it is true that if disclaimants had had an interest in the contract the disclaimers would not have operated to assign such interest, nevertheless they were admissible in support of plaintiff's testimony that he was the sole party in interest, and their admission was likewise proper for the protection of the defendant, since they will operate to estop the disclaimants from ever claiming or asserting any right or interest under the contract.

3. But for another reason defendant's contention cannot be maintained.   A full copy of the bill of sale and of the contract, including the signatures thereto, were attached to the complaint as exhibits, and if there was a defect of parties plaintiff that fact appeared upon the face of the complaint.   Defendant demurred to the complaint upon other grounds, but not upon the particular ground referred to.   It is a settled rule in this state that if there is a defect of parties plaintiff in the action and that fact appears upon the face of the complaint, the objection must be taken by demurrer and cannot be taken by answer; while if it does not appear upon the face of the complaint it must be raised by answer or it will be waived: Sections 68, 71, 72, Or. L.; *Cohen* v. *Ottenheimer,* 13 Or. 220, 224 (10 Pac. 20); *Osborn* v. *Logus,* 28 Or. 302, 307 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Cooper* v. *Thomason,* 30 Or. 161, 176 (45 Pac. 295); *Owings* v. *Turner,* 48 Or. 462, 464 (87 Pac. 160).

Defendant's principal contention is that under the bill of sale and contract the property in the machinery and equipment passed to plaintiff upon the execution of these instruments and the delivery of the bill of sale, and that as delivery of a part of the chattels has been made, plaintiff could not rescind the contract without returning or offering to return the delivered chattels, and that since there was no such return or offer to return plaintiff's right of recovery fails. Many of the assignments of error are based upon this conception of the rights of the parties and must stand or fall upon the determination of this question. Defendant also contends that if the action can be maintained recovery must be limited, either to a recovery of the money paid or of the damages sustained, and that a recovery of both cannot be had in the same action, and that, in any event, consequential damages cannot be recovered in this action.

4. Before referring to the statute and applying it to the agreement of the parties, we refer to the true rule defining the duties of the buyer and the circumstances under which he is compelled to return or offer to return property received under a contract of sale in a case where the goods are rejected because they are not what the contract requires, which is stated by Mr. Williston as follows:

"Where the buyer rejects goods because they are not what the contract requires he is under no obligation to return them; he may simply refuse to regard them as his. But when the property in the goods has passed and the buyer wishes to revest the property in the seller a return or offer to return the goods is necessary." 2 Williston on Sales (2 ed.), § 610.

Section 8181, Or. L., which is Section 18 of the Uniform Sales Act, provides that

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

Section 8182, Or. L., prescribes the rules for ascertaining the intention of the parties as to the time when the property in the goods pass to the buyer, unless a different intention appears. Rules 1, 2 and 5 thereof prescribe as follows:

"1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed. 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them in a deliverable state, the property does not pass until such thing be done. * * 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon."

Under these statutory provisions, the intention of the parties to a contract for the sale of specific goods, such as are involved here, is controlling upon the question of when the title to the goods passes if such intention can be collected from the terms of the contract itself or from the conduct of the parties, the

usages of trade, or the facts and circumstances of the case. But, if such intention cannot be determined by those means, then the rules provided by the statute for making such determination are controlling.

5. Defendant argues that the bill of sale was an instrument of transfer and that immediately upon its execution and delivery it operated as an immediate transfer of the property in the chattels, and that the provision contained in the bill of sale,—"does by these presents grant, bargain, sell, convey and deliver unto the said parties of the second part all of the following described personal property, in its present location and condition, situated near Sherwood, Oregon, as follows," shows conclusively the intention of the parties that the sale was then and there to be an executed sale without delivery or payment of the price. If this provision was the only provision in the contract evidencing the intention of the parties there would be much force in defendant's contention, although, in this state, the rule seems to be that "a bill of sale does not operate to pass the title without a delivery" (*Bartel* v. *Lope*, 6 Or. 321, 326); and that "a bill of sale, as such, is not entitled to record and a record so-called of a bill of sale is an absolute nullity." *Nicklin* v. *Betts Spring Co.*, 11 Or. 406, 409 (5 Pac. 51, 53, 50 Am. Rep. 477). "A sale really consists of two separate and distinct elements; first, a contract of sale which is completed when the offer is made and accepted; and, second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price as may have been agreed on between the parties." 23 R. C. L. 1187.

6, 7. But however that may be, it is admitted by the pleadings and by both parties upon the appeal

that the bill of sale and contract were made by the parties to take the place of and supersede the former contract between the parties concerning the same subject matter, and that although one was executed on January 6th and the other on January 5, 1920, they each form a part of and together constitute but one contract. Since they relate to the same subject matter and were parts of the same transaction, and were executed at or about the same time and are admitted to be constituent parts of but one contract, they are to be construed together for the purpose of showing the true contract between the parties.

The provisions of the contract differ very materially from the above provision of the bill of sale. At the time these papers were executed the machinery and equipment in question were attached to and .formed a part of what was known as the Tappendorf Mill near Sherwood, Oregon. The contract did not contemplate the sale of the mill building nor of the mill itself as a whole, but only the parts designated in the bill of sale. Before these parts could be delivered by defendant to plaintiff is was, necessary to remove them from the mill. Until detached and removed they were not in a deliverable state. The contract required the defendant to dismantle the Tappendorf Mill, to haul the machinery and equipment to the railroad, and there load it on board cars, prepay the freight thereon, and cause it to be shipped to White Salmon, Washington.

It is a general rule of the common law that a mere contract for the sale of goods, where the goods are identified and nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid nor the goods delivered to the purchaser. If this con-

tract had been made without any agreement requiring the seller to do any act beyond merely transferring the property in the condition and at the place it then was, the transaction, upon the execution and delivery of the bill of sale, would have been a present sale of the machinery and equipment, and as purchaser, the plaintiff would have been bound to take the property where it was and in the condition it then was, but under the terms of the contract, no such contract was entered into. Plaintiff did not purchase the property where it then was nor in the condition that it then was, although, by the terms of the contract, when the title was to pass it was to be in the condition that it then was as to quality and quantity, but contracted to purchase it after the state in which it then was had been changed by the seller, and this, at common law, would have been a contract for a future sale of the goods and not a present sale: See *Bradley* v. *Wheeler,* 44 N. Y. 495, and cases and authorities there cited. See, also, 1 Williston on Sales, § 2. The contract required the defendant to expend labor upon the machinery and equipment before it could be in the state contemplated by the bargain of the parties. It was not purchased as a part of the mill, although at the time it was attached to the mill. Before it could be put into the state contemplated by the parties it was necessary to detach it and disconnect it from the Tappendorf Mill, and this labor the contract required the defendant to perform in order to put it into a deliverable state so that defendant could perform its contract.

The provisions of the Uniform Sales Act, to which we have referred, would, under such circumstances, prevent the property in the machinery and equipment from passing until the defendant had performed all

the labor upon said chattels that the contract required it to perform, unless the parties agreed that the title should pass before said labor was performed. There was no such agreement, and there are no circumstances from which such an intention can be inferred, and hence the provisions of the Uniform Sales Act are controlling. Since, therefore, the defendant was bound to do something to the goods for the purpose of putting them in a deliverable state, the property did not pass under Rule 2 of Section 8182 until defendant had performed all that it was required to do under the contract for the purpose of putting them in a deliverable state; and, under Rule 5, since it was required by the contract, after loading the chattels upon the cars, to pay the freight to White Salmon, Washington, the property in the machinery and equipment could not pass to plaintiff until it had reached the place agreed upon.

For another reason the property did not pass. The contract itself was an indivisible contract which required complete performance by defendant as the consideration for the gross sum which it was stipulated should be paid therefor. Under an indivisible contract for the sale of goods which requires a complete performance by the seller as the consideration for the payment of a gross sum, "the property in none of the goods will pass until the property in all can pass." See 2 Williston on Sales, §§ 265a and 278.

By the terms of the contract defendant was required to have all of said machinery and equipment "loaded on cars by April 1, 1920, to be shipped to White Salmon, Washington, freight prepaid, in a like and similar condition and state of repair as to its present condition," etc. The general rule of law is that the performance of a contract must be com-

pleted at or within the time fixed by the contract: Leake on Contracts (3 ed.), § 772. April 1, 1920, was the exact time fixed definitely by the terms of the contract for complete performance upon the part of the defendant, and the date was thereby made a vital term of the contract. Hence, by the very terms of the contract time was of the essence of the contract, and if this requirement was not complied with, the contract being an entire contract and not divisible, plaintiff had a right to reject what he had received under the contract as well as what he was to receive, unless he elected to continue the contract in spite of the breach. There was no allegation or proof of waiver upon defendant's part or of any election by him to continue the contract. On the contrary, the evidence showed that plaintiff notified the defendant of his refusal to accept any of the said machinery and equipment because of such breach.

8. The defendant was also required, by the terms of the contract, to have a test made of one of the boilers and to furnish plaintiff with a certificate of such test. The certificate was not furnished. The contract provides that "in the event said boiler does not stand said Hartford test the first party is to pay the second party $2,000 and the sale is null and void." Defendant contends that under this provision plaintiff's right of recovery is limited to the sum of $2,000, but we do not think that this contention is sound. It is obvious that this provision was inserted in the contract so that a test could be immediately made, and, if it was found that the boiler was incapable of standing the test, the contract could be terminated and the money repaid without further cost or expense to the parties. It was not contemplated by the contracting parties that before the test

should be made and the boiler be found not to meet the required test, the plaintiff should procure and deliver in escrow the certified check, nor that the Tappendorf Mill should be dismantled and a part of the machinery and equipment should be loaded and shipped to White Salmon, Washington. If defendant had complied with the implications of its contract and had had the required test promptly made and then the boiler had been found to be deficient, the plaintiff could not have been put to the costs and expenditures of which he now complains, and the return of the money would have afforded plaintiff all of the redress he would have been entitled to. In that case, the terms of the contract would have fixed the remedy, but the contract in itself provided no remedy for the wrongs for which plaintiff is now seeking redress.

It is admitted that the plaintiff has parted with the sum of $8,000, and there was evidence tending to show that because of defendant's objection the bank refused to return the certified check to plaintiff. There was also evidence tending to show that plaintiff, in reliance upon defendant's agreed performance, expended considerable sums of money in preparing to install the mill at White Salmon, Washington, and the evidence tended to show that at the time the defendant entered into the contract it was informed that plaintiff was purchasing the machinery and equipment in order to install it in the mill which he proposed to construct at White Salmon, Washington, and that it was to be used in the operation of said mill. All of these questions of fact, so far as disputed, have been determined adversely to defendant by the verdict of the jury.

9. There was evidence tending to show that plaintiff, relying upon defendant's performance as contracted for, in good faith expended considerable sums of money preparatory to applying the machinery and equipment to the use he intended to make of it, and that defendant had knowledge of his intention to use the machinery and equipment for that purpose. The amount of these expenditures was lost to plaintiff by defendant's failure to perform the contract according to its terms, and because this loss was proximately caused by defendant's said failure, the amount of the loss was properly recoverable as consequential damages. It is evident from the amount of the verdict that the jury found that the plaintiff was entitled to recover the $8,000 he had parted with, and a part of the special damages claimed. Under the rule stated by Mr. Williston, which he says was also the rule at common law, since the property in the machinery and equipment had not passed to plaintiff, plaintiff, upon defendant's breach, was entitled to reject what he had received under the contract and refuse to regard it as his own, and to recover the damages sustained without rescinding the contract or returning or offering to return what he had received, thus leaving the title to all of the property in defendant, as it always had been, and not disaffirming the contract as in the case of a rescission, but leaving the contract in full force and effect and suing merely for the damages sustained by reason of the breach.

These considerations render it unnecessary for us to refer to the remaining assignments of error, all of which have been considered. While we think there was error in respect to some of the matters complained of, we are satisfied that those errors were harmless in view of what we believe to be the law of

the case. From a careful examination of the whole record we are satisfied that in case of a reversal it would be our duty not to remand the case for another trial, but to enter a judgment in favor of plaintiff for an amount equal to that of the judgment appealed from, and for that reason the judgment of the Circuit Court will be affirmed.        AFFIRMED.

BURNETT, BEAN and BROWN, JJ., concur.