Submitted on brief February 4; affirmed July 1; rehearing denied September 9, 1930

J. L. LATTURE EQUIPMENT CO. *v.* GRUENDLER
PATENT CRUSHER & PULVERIZER CO.

(289 P. 1067)

*Beach, Simon & Greene* and *E. W. Grant,* all of Portland, for appellant.

*Albert L. Gordon* of Portland for respondent.

BEAN, J.   This is an action at law tried by the court without a jury. Findings of fact were made and judgment entered in favor of plaintiff for a part of the amounts claimed by plaintiff; both parties appealed.

Plaintiff is an Oregon corporation. The defendant is a corporation organized under the laws of the state of Missouri. Its principal office is at the city of St. Louis.

As alleged and as it appears in the record, plaintiff purchased from defendant on trial on April 13, 1927, at Portland, Oregon, one No. 6X steel frame Gruendler monster crusher with trap iron catcher at the agreed price of $4,063 f. o. b. factory at the city of St. Louis. The defendant guaranteed the crusher in writing as follows:

"This order is confirming our conversation whereby this machine is put in on trial, being guaranteed to produce twenty yards of one-half inch material per hour, or forty yards of three-fourth inch material, crushing either gravel or quarried rock; also that the maintenance cost will not exceed .02c per ton. The above is with the understanding that not less than seventy-five H. P. be used on this machine."

Plaintiff asserts that relying upon the warranty about August 12, 1927, it paid the defendant the sum of $1,489 and J. W. and J. R. Hillstrom, who purchased the crusher from plaintiff, about August 20, 1927, paid defendant, for plaintiff, $885; that the crusher failed to fulfill the warranty and said J. W. and J. R. Hillstrom rejected the crusher. That the crusher was first put in operation about July 8, 1927, and kept in operation, as far as possible, until about November 1, of that year. Soon after July 14, 1927, the crusher failed utterly to comply with the warranty, notice of which was given to defendant. After continuous, but unsuccessful, efforts upon the part of defendant to make the crusher comply with the warranty, the same was rejected by plaintiff about November 1, 1927.

The defendant admits the sale and the guaranty as set forth above; alleges that the machine was not properly used but that wet gravel was crushed and that plaintiff, by Hillstrom Brothers, used and tested the machine for a sufficient time to inform plaintiff of its capacity and fitness and thereafter accepted the same and purchased other machines of defendant. Defendant also counterclaimed for the price of the machine.

The court found: that the crusher was valueless; that plaintiff has ever since November 1, 1927, held the crusher subject to defendant's orders; has demanded repayment; that plaintiff sold the crusher to Hillstrom Brothers, contractors of Marshfield, Oregon, under a similar guaranty and upon delivery, the said crusher was transported to Curry county and set up by Hillstrom Brothers and set to work crushing gravel taken from the bed of Pistol river, where its work upon the larger sized material, for about a month, was fairly satisfactory, during which time the $1,489 was paid by plaintiff to defendant, but when the crusher was put to producing a smaller material, namely the three-quarter inch material, that part of the crusher, usually referred to as the hammers, failed.

The court further found as follows:

"That the profit on resale by plaintiff corporation to the said J. W. and J. R. Hillstrom was the sum of $1,837.00, but the court finds that plaintiff waived its right of rescission of rejection by not acting promptly and that in equity and good conscience plaintiff is not entitled to recover any profit on resale of said machine or any part thereof."

The rock crusher failed to comply with the said warranty. Plaintiff paid the sum of $313.54 freight and express upon parts furnished by defendant to plaintiff

in an endeavor to make the rock crusher operate satisfactorily; and paid $579 freight on rock crusher, $263.85 freight from Marshfield, Oregon, to Ewing, Oregon, where the crusher was shipped at the request of the defendant for the purpose of trying the same on quarry rock, and as follows:

"That the defendant, by its conduct acquiesced in the plaintiff waiving its right of rescission or rejection by not acting promptly and with knowledge that the machine was not performing according to its guarantee and has waived its right of insisting that plaintiff should be bound but the court finds that in equity and good conscience the plaintiff is not entitled to any damages by reason of the said rock crusher having failed to comply with the said warranty.

"As to plaintiff's second cause of action the court finds that plaintiff paid the sum of $579.00 freight upon rock crusher manufactured by defendant corporation known as shop No. 8554, the sale of which said crusher by defendant to plaintiff was rescinded and the title thereto now rests in defendant corporation."

That the parts supplied by defendant to plaintiff sought to be recovered in defendant's counterclaim were supplied in an endeavor to make the Hillstrom crusher operate satisfactorily and in accordance with the guarantee and without any agreement on the part of the plaintiff to pay for the same.

The court found plaintiff was entitled to recover from defendant $1,489 paid on the purchase price; of $579, freight, from the factory to Marshfield, Oregon; $313.54 freight and express paid on parts supplied for the crusher and $263.85 freight on crusher from Marshfield to Ewing, Oregon, and $579 freight paid from the factory to Portland, Oregon, upon another crusher pur-

chased by plaintfif of defendant September 29, 1927, shop No. 8554, which defendant agreed to repay to plaintiff.

The first assignment of error involves a motion of defendant to strike portions of the complaint. The cause having been tried by the court without a jury, it is unnecessary to pass upon this question, except as it may be embraced in other issues. The second assignment of error pertains to the refusal of the court to require plaintiff to elect the remedy it intended to pursue. This question may be considered with the other assignments of error.

The third assignment of error is that there is no evidence to support the finding of the trial court of payment of freight and express upon the rock crusher, or parts thereof.

■ There can be no controversy as to the question that the findings of the court upon the trial of a law action, without a jury, are of the same force and effect as the verdict of a jury. We are not to weigh the evidence, if conflicting, but are simply to inquire if there is any substantial competent evidence to support the findings.

A reference to pages 76, 77 and 194 of the transcript of evidence discloses proof that the freight on the crusher and the freight and express on parts furnished to be used on the crusher and also $579 freight paid on the second crusher contracted by plaintiff, which was returned to defendant, were paid by plaintiff. The testimony amply supports such findings of the trial court.

Mr. William Gruendler, president of the defendant company, when a witness, stated when the matter of

the freight on the second crusher was called to his attention, in an interrogatory thus: "Mr. Latture has paid $579 freight on it (second crusher) from the factory here?" Answer: "We have never refused to pay the freight, if it was returned."

So it seems that the amount of freight, which was the same on the two machines mentioned, is not questioned and the same may be said in regard to the express and freight on parts.

Passing to assignment of error No. 5, it is, in effect, that the findings of fact made by the court do not entitle the plaintiff to any relief or judgment in its favor, whatsoever. This contention is based largely upon the construction of the finding No. VI quoted above.

Taking the gist, or an abstract of the findings, the court found the contract of purchase of April 13, 1927, which is not questioned, the contract of guaranty; that the crusher upon being fairly tested did not fulfill the requirements of the warranty; that the parts supplied by defendant to plaintiff were supplied in an endeavor to make the Hillstrom crusher operate satisfactorily and in accordance with the "guaranty" and without any agreement on the part of plaintiff to pay for the same; the crusher was the property of the defendant and the title thereto never passed to plaintiff; defendant is now entitled to the possession thereof; and all of the facts in regard to the payment of freight and express; and as a conclusion that the plaintiff is entitled to recover the amount paid on the purchase price and freight upon the two crushers and freight and express paid on the crusher parts supplied therefor.

The objection to the findings of fact are largely as to the form thereof on account of the reference to a

"rescission or rejection" of the crusher. It seems that the word "rejection" explains the meaning of the word "rescission" as they are used.

The facts of the case are portrayed in the record. The real question is: what are the rights of the parties under the circumstances?

One word in regard to briefs. The writer believes that this case is far from one that should be submitted on the briefs without an oral explanation of the circumstances attending the deals pertaining to the various crushers mentioned in the record. We will proceed to dig the question out as best we can.

It is written large in the order for the machine, which contains the guaranty and the record of the transaction, that it was never contemplated by the parties that the title to the crusher should pass from defendant or that a sale should be made, or the crusher accepted by plaintiff, until the machine had been tested and it was found that it would do the work as guaranteed. Hillstrom Brothers had a road construction contract and plaintiff was endeavoring to supply them with machinery to crush the rock to be used in such work. It was all thoroughly understood by all the parties. The defendant was well informed by plaintiff by wire and letter of what was done with the crusher and how matters progressed and of the result at different stages of work in testing the plant. The directions of the defendant were strictly followed in such manipulations, when the machine was found to be unfit to crush the quarry stone. All of the parties worked together to put it in condition so that it would accomplish as nearly as possible the desired results. After the defendant had furnished a number of "hammers" and parts made

of different kinds of steel at great expense, it was admittedly a failure and the defendant abandoned the trial.

In its communications with plaintiff it endeavored to divide the blame for its want of knowledge of the hardness of the rock and the work required of the crusher between its representative Mr. Bishop and plaintiff. The contract of guaranty was that of defendant. Plaintiff was not responsible to defendant for the situation. Defendant desired to build up a trade in that line in the Northwest and it took the chance like any one making a contract. It should live up to its contract. The crusher was duly rejected by plaintiff and, as the trial court found, is the property of defendant.

■ The plaintiff is entitled to be reimbursed for the expenditures it made in payments on the crusher and for freight and express on it and the parts furnished by defendant in an attempt to recondition the machine; and also to a return of the money paid for freight on the second crusher ordered by plaintiff from defendant which was rejected and returned to defendant, all as found by the circuit court, which findings are supported by the evidence.

Plaintiff relied upon the warranty, as the evidence tended to show. Defendant ''put in'' the machine ''on trial'' and guaranteed it to produce a certain quantity of certain sizes of material per hour, ''crushing either gravel or quarried rock''; also that the maintenance cost would not exceed 2 cents per ton with not less than 75 H. P. to be used on the machine.

■ The plaintiff, as the testimony indicated, never accepted the machine. The fact that the machine was kept long enough to give it a fair test did not curtail

plaintiff's rights, except in the matter of the use of the machine which we will hereafter mention. See *Austin Co. v. Tillman Co.*, 104 Or. 541 (209 P. 131, 30 A. L. R. 293).

■ In the present case the parties did not stipulate that in case of failure of the guaranty the plaintiff should employ any particular remedy. The rights of the parties are governed by the general rule.

Where the buyer of personal property has resold the property, that fact in no way affects the right to maintain an action for the seller's breach of warranty: 24 R. C. L., p. 240, § 516. It is not reasonable for the plaintiff to bear the expense of testing the defendant's rock crusher. The principle is announced in 35 Cyc. 440, thus:

"The return of the goods for breach of warranty will be regarded as waived where the failure to return or the delay is caused by conduct of the seller in requesting the buyer to retain the goods for further trial, or by a promise by the seller to remedy the defects, or by an attempt of the seller's agent to remedy the defects after the expiration of the time limited without objection on the ground that notice had not been given."

In *Austin Co. v. Tillman Co.*, 104 Or. 541 (209 P. 131, 30 A. L. R. 293), in an opinion by Mr. Justice McCourt, relating to damages for the failure of a machine to comply with the contract of sale, the instructions to the jury given by the trial court in that case were approved. After the more general instructions in regard to damages, we find the following at page 582:

"In addition to this item, if the plant was not as contracted for, plaintiff is liable to the defendant on his warranty. Therefore, if you should find from a preponderance of the evidence that at or before plain-

tiff accepted the contract, * * * which acceptance is agreed to have been April 26, 1919, defendant had entered into a contract or contracts with Clatsop county whereby defendant was obligated to lay on the road·or roads of said county substantially 36,685 square yards of one and a half inch asphaltic top which defendant intended to employ said plant in laying, and that plaintiff had notice or knowledge of it, or had notice or knowledge of facts from which an ordinarily reasonable man would have known of such purpose and contract, in that event, the defendant is entitled to recover upon the warranty in this contract, * * * the damage suffered, if any, by reason of the fact that the plant was not as warranted by plaintiff. * * *."

See also *Feeney & Bremer Co. v. Stone,* 89 Or. 360, 366 (171 P. 569, 174 P. 152); *Durbin v. Denham,* 106 Or. 34 (210 P. 165, 29 A. L. R. 1227); *Mine Sup. Co. v. Col. Min. Co.,* 48 Or. 391 (86 P. 798). In Williston on Sales (2d Ed.), § 614, it states the rule, in part, as follows:

"If consequential damages are natural consequences of a breach of warranty, the plaintiff is generally allowed to recover them. If one sells an animal warranting it to be sound, when in fact it is infected with disease, the seller is responsible for expense incurred for medicine and medical attendance, and for damages resulting from a communication of the disease to the buyer's other animals in an action on the warranty."

*Rhodes v. Libby, McNeil & Libby,* supra, P. 128 (288 P. 207); *Lloyd-Garretson Co. v. Marvin & Co.,* 128 Or. 191 (274 P. 128); *American Oil P. Co. v. Foust,* 128 Or. 263 (274 P. 322), the syllabus, which indicates the opinion on this point, reads thus:

"Defaulting seller must compensate his buyer with such damages for breach of warranty as may fairly and reasonably be considered, either as arising natu-

rally from the breach, or such as may reasonably be supposed to have been in contemplation of the parties, when they made the sale, as the probable result of its breach.''

■ Payment of the purchase price does not, as a matter of law, bar action for the breach, the question of waiver being, at the most, one of fact: *Edd v. Western Union,* 127 Or. 500 (272 P. 895).

There was no error in rendering a judgment on the findings in favor of plaintiff.

■ In considering the plaintiff's cross-appeal we are governed by the same rules that we have mentioned relating to the appeal of defendant; that is, if the finding of the court is sustained by the testimony, such finding must be upheld. The same question arises, that would have arisen if the case had been submitted to the jury and a verdict rendered, fixing the damages the same as the trial court did.

It was contemplated at the time of the contract that the machine would practically do the work of two crushers; that is, one to break up the rock coarsely and another to crush it into fine material for the top covering of the road.

The machine was admittedly contracted by plaintiff Hillstrom Brothers, as the court found, at a profit on resale of $1,837. After a long time consumed in testing and attempting to put the crusher in a proper condition to do the work, there was some delay in finally rejecting the machine. The Hillstrom Brothers had a road contract on their hands and they used the crusher at Pistol River in crushing some 24,000 yards of material, mostly 2½-inch and some of the finer. The cost of labor for crushing that amount of material

was $13,371. Mr. Hillstrom claims that with a crusher used as a reducer and another crusher, or, as termed, a double crusher, the work could have been done for about $8,456.

It appears that in the section of the state where the crusher was used, at Pistol River, when ''the autumn rains commence, the high water would come up'' and they would have to shut down until the following spring. They claim they could not well stop work and put in other machinery. They had to go through with what they had and work fast or sacrifice that year's work and augment the damages which would be proximately caused by the failure of the defendant to furnish a machine in accordance with the guaranty. In other words, the use made of the crusher while testing the same, as the evidence indicated, was in the interests of the defendant company.

Nevertheless, the machine was used for considerable length of time in crushing 2½-inch material which was not, strictly speaking, testing the machine. The necessary test was as to the ¾-inch or ½-inch material.

In estimating the amount of damages caused plaintiff by the failure of the machine to do the work described, whatever use was made thereof in doing good work, or fairly good work, would undoubtedly lessen or offset the damages.

This case was tried by both of the parties upon the theory that whatever the Hillstrom Brothers did in the use of, or in regard to, the crusher, was authorized and acquiesced in by the plaintiff and practically amounts to the same as though the plaintiff had used the machine itself. At Pistol River, while the Hill-

strom Brothers were performing their road contract, from about July 14 until November, it was agreed that the crusher did good work while crushing 2½-inch material. The number of yards crushed per day, while crushing with the coarser material, of which there was some 9,000 yards, varied from 240 to 376 yards per day. The hammers wore out rapidly as Hillstrom claimed, wearing upon one side, making the other side sharp and necessitating changing the hammers around. Nevertheless, while crushing finer material from gravel at Pistol River, from October 3 to October 31, working from nine to eleven hours a day, the result is given as "from 116 to 352 yards a day with the exception of five days when it fell below 100 yards."

During the time the crusher was used at Pistol River before the crucial test was made upon quarry stone, as stated by Mr. Hillstrom, it crushed some over 24,000 yards.

The court undoubtedly offset the $1,834 profits on resale with the use of the machine· during the time mentioned and lessened the damages. That is how we construe the language contained in the finding (No. VI), where the court found that:

"* * * that in equity and good conscience plaintiff is not entitled to recover any profit on resale of said machine or any part thereof."

During the time this crusher was used, evidence indicated that it took the place of two crushers. That afterwards, Hillstrom Brothers, in renting a crusher, as we understand, the lighter one, they paid $100 per month rental.

■ Taking it all in all there was testimony tending to show that the use of the crusher was valuable and

lessened the damages in the case in the same amount of damages that was disallowed by the trial court. In many damage cases, the amount thereof is a matter of estimation. The fixing of the amount is for the determination of the triers of fact who are usually a jury. In the present case, the trial court performed that function.

The cross-appeal of plaintiff presents the question whether the plaintiff is entitled to recover damages for loss of profits on sale of the crusher purchased from defendant for immediate resale to Hillstrom Brothers, the knowledge of whom and the purpose for which the crusher was intended had been fully communicated to the defendant prior to the purchase by plaintiff.

Defendant had recently appointed Mr. C. H. Bishop of Portland, Oregon, as its engineer and agent who represented it. When testifying as a witness in the case Mr. Bishop stated that the representations and claims as to what these machines would do, as to capacity to produce material and as to producing it at a very low maintenance cost, were specifically authorized by defendant. The correspondence in evidence bears out this statement.

The plaintiff contracted the crusher to Hillstrom Brothers under a similar warranty as that given by defendant to plaintiff and under the specific directions of Mr. Bishop, plaintiff's engineer. The president of plaintiff corporation, who has had experience in this line for a long time, was skeptical as to the recommendations that the crusher would do the work guaranteed, but finally agreed to try the same and to recommend it to a prospective purchaser of a rock crusher, Hillstrom Brothers of Marshfield, Oregon.

These parties met with Bishop and plaintiff's officers several times and all were present when it was agreed to purchase one of defendant's rock crushers on trial, subject to the warranty quoted above.

The plaintiff, in the case the crusher filled the bill as guaranteed, would have made a profit on the sale to Hillstrom Brothers of $1,837. Unfortunately, the basalt rock of volcanic formation was harder than defendant was aware of and the long correspondence between plaintiff and defendant discloses that the machine did not and could not fulfil the written warranty. This the trial court found and we mention it only as a kind of setting of the case.

■ What is undoubtedly intended by the language of the finding (para. X quoted above) is, that at the time it was first ascertained by the plaintiff that the rock crusher could not do the work as guaranteed, the plaintiff retained the crusher at the special request of defendant and with the assistance of the defendant and its engineer endeavored to so revamp the machine that it would do the work. Surely the defendant can not complain on account of plaintiff and its vendee, the Hillstrom Brothers, making change after change in the crusher at the instigation of the defendant itself; whether we would call it a waiver or not, seems immaterial.

Defendant contends that the property in the crusher passed to plaintiff by acts and conduct on its part amounting to an acceptance of same, as a result of which plaintiff should be held liable to defendant. Defendant's brief reads thus:

"There is no doubt from the judgment entered by said court that it decided this case on the theory of rescission of contract, and that it felt that plaintiff

was entitled to rescind, and attempted to restore plaintiff to its former status by refunding what money had been paid upon the purchase price of said rock crusher by the plaintiff, and the items of freight alleged to have been paid by said plaintiff."

Or. L., § 8230, subd. (c), reads thus:

"Remedies for Breach of Warranty: (1) Where there is a breach of warranty by the seller, the buyer may, at his election; * * *

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;"

Or. L., § 8231, reads as follows:

"Interest and Special Damages. Nothing in this act shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

Or. L., § 8181, provides:

"(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such times as the parties to the contract intend it to be transferred."

Or. L., § 8182, directs:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: * * *

"(2) When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer: (a) When he signifies his approval or acceptance to the seller or does any other act adopting the transaction. * * *"

■ The question as to what is a reasonable time, under the latter section, is a question of fact. The learned trial judge stated as follows:

"Oh, I think the fair construction of the contract is they would give it a working test, such a test as the machine would ordinarily be put to, to carry out such a contract as they had. I am satisfied that is the kind of a bargain they entered into."

■ With the contention of defendant we are unable to agree. There was testimony to support the findings of the court. We think the trial judge placed the proper construction upon the guaranty. This, from the language used by defendant and from all the attending circumstances of the deal. It was only reasonable that the machine should be tested on quarry rock, which, as the trial court found, and as shown by the letters in evidence, was done at the request of defendant.

■ As we view it, this is an action for damages for breach of the written warranty and is not based upon a rescission of the contract. Plaintiff bases its claim upon the contract and not upon a disaffirmance thereof, as in the case of a rescission. Plaintiff's claim leaves the contract in full force and effect. The principle involved is enunciated by Mr. Justice RAND in the case of *Pulkrabek v. Bankers' Mortgage Corp.*, 115 Or. 379 (238 P. 347), while the facts in the cases differ somewhat. We there read as follows at page 393:

"Defendant contends that under this provision plaintiff's right of recovery is limited to the sum of $2,000, but we do not think that this contention is sound."

At page 395, we read:

"Under the rule stated by Mr. Williston, which he says was also the rule at common law, since the property in the machinery and equipment had not passed

to plaintiff, plaintiff, upon defendant's breach, was entitled to reject what he had received under the contract and refuse to regard it as his own, and to recover the damages sustained without rescinding the contract or returning or offering to return what he had received, thus leaving the title to all of the property in defendant, as it always had been, and not disaffirming the contract as in the case of a rescission, but leaving the contract in full force and effect and suing merely for the damages sustained by reason of the breach."

The following cases announce principles applicable to the case at bar: *Mercer v. Germania Ins. Co.,* 88 Or. 410 (171 P. 412); *North Alaska Salmon Co. v. Hobbs Wall & Co.,* 159 Cal. 380 (113 P. 870, 120 P. 27, 35 L, R. A. (N. S.) 501, and notes); *Detwiler v. Downes,* 119 Minn. 44 (137 N. W. 422, 50 L. R. A. (N. S.) 753 and notes); Note to *Fox v. Wilkinson,* 14 L. R. A. (N. S.), p. 1107 et seq.

The findings having been made and construed as we have indicated, there being substantial competent evidence to support the same, the court is not warranted in making a change thereof. Therefore, the cross-appeal is denied.

■ Defendant's assignment of error No. IV is predicated upon the failure of the court to disallow plaintiff's disbursements for the reason that the bill of disbursements was not served and filed "within five days from the date of rendition of a judgment." Counsel for defendant cites *McFarlane v. McFarlane,* 43 Or. 486 (73 P. 203, 75 P. 139); *Miller v. Shute,* 55 Or. 603 (107 P. 467).

Or. L., section 569, provides, in part, that no disbursements shall be allowed to any party, unless he shall serve on such adverse party or parties, as are entitled

to notice by law, or rule of the court, and file with the clerk of such court within five days after the rendition of the judgment or decree, a statement (of disbursements) with proof of service thereof, if notice to the adverse party is required.

The section, just mentioned, contains the further provision which appears to have been overlooked by counsel that "such statement of disbursements may be filed with the clerk at any time after five days but not later than the first day of the next regular term of the court occurring after the expiration of said five days; but in such case, such statement must be served on the adverse party or parties, whether he or they shall have appeared or not."

The judgment is dated on the 2d of August, 1929, but is said to have been rendered on August 12, 1929. The difference in these dates is not material. The cost bill was duly filed August 20, 1929. The point urged by defendant is not well taken. The cost bill was served and filed before the first day of the next regular term of the circuit court in Multnomah county.

In the *McFarlane* case cited by defendant, the disbursements were rejected for the reason no statement thereof was filed until after the first day of the next succeeding term of court occurring after the expiration of the five days. This case does not support defendant's position. Neither does the case of *Miller v. Shute,* supra. We see no reason for considering the affidavit in regard to a stipulation and the further matter of a waiver presented by plaintiff. See *Basin v. Wade,* 47 Or. 526 (84 P. 387); *Egan v. N. Am. Loan Co.,* 45 Or. 131 (76 P. 774, 77 P. 392).

■ In order to defeat the bill of disbursements served and filed, it is incumbent upon the defendant to point out that the bill of costs and disbursements was not served and filed until after the first day of the next regular term of court after the expiration of said five days. This does not appear in defendant's objections. Objections to cost bill must point out particularly the errors therein: *Walker v. Goldsmith,* 16 Or. 161 (17 P. 865).

The statute governing costs and disbursements was amended in important particulars in 1903, and the law has been plainly announced in the decisions since that date.

It follows that the judgment of the circuit court should be affirmed. It is so ordered.