Argued and submitted January 14, reversed and remanded
with instructions June 29, reconsideration granted; former
opinion adhered to as modified (53 Or App 531, 633 P2d 1)
August 24, petition for review denied November 24, 1981 (292 Or 109)

## MILLER,
### *Appellant,*
*v.*
## HUBBARD-WRAY CO., INC.,
### *Respondent.*

(No. 79-210-E-2, CA 18104)

630 P2d 880

Thomas C. Howser, Ashland, argued the cause for appellant. On the briefs were Gregory A. Parker and Cottle, Howser & Cue, Ashland.

Douglas P. Cushing, Medford, argued the cause for respondent. With him on the brief was Cushing, Haberlach, Hanson & Black, Medford.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from a decree denying him the right to rescind a contract with defendant for purchase of a hay baler and further denying damages for breach of express warranty and for unlawful trade practice. On appeal plaintiff contends the trial court erred in finding that the disclaimer of warranties clause in the contract was sufficient to nullify the alleged express warranty given by defendant's[1] salesperson that the baler in question was manufactured in 1976 when in fact it was manufactured in 1972.[2] This is a suit in equity and our review is *de novo.* ORS 19.125(3); *Latture v. Gruendler Co.,* 133 Or 421, 438, 289 P 1067 (1930).

The essential facts are not in dispute:

In 1978, plaintiff decided to trade in his 1972 baler on a newer and slightly larger model. To this end, he contacted defendant and was shown a baler which defendant had taken in trade. The salesperson represented it as a 1976 baler that had been used one year and stored in a barn for one year and stated that, to his knowledge, it was in good condition. This statement was based on information given by the customer who traded the machine to defendant. The trial court found that the salesperson's representation was innocently made and this finding is not challenged on appeal.

Plaintiff purchased the baler for $8,000, paying $3,000 down and financing the balance. When plaintiff took delivery in June, 1978, he immediately experienced problems. The day it was delivered, defendant's mechanic spent two to three hours making adjustments. He testified that, while it was not uncommon to experience difficulties initially and from time to time in getting a baler to operate properly, the problems encountered by plaintiff, resulting

---

[1] The original sale was financed through John Deere Company. Following initiation of this lawsuit, all interest in the baler was reconveyed to defendant, and John Deere Company has no other interest in this case, filed no appearance and is not involved in this appeal. References to "defendant" are strictly to defendant Hubbard-Wray Co.

[2] Plaintiff also contends that the trial court held rescission was unavailable in this instance for innocent misrepresentation. We do not view the trial court's findings as so holding. In any event, the contention is disposed of by our discussion of the disclaimer of express warranties.

in repair costs of over $1,400, were beyond what was normally to be expected. Because of the abnormal problems, the serial number of the baler was checked with the local dealership, and plaintiff discovered that the baler was in fact built in 1972 and sold in 1973 to the person from whom defendant acquired it.

Plaintiff continued to use the baler throughout the summer of 1978, because it was essential to bale and put up the hay while it was freshly cut to preserve its nutritional value. During that period, plaintiff was in contact with defendant and was told by defendant's vice-president that something would be worked out. The parties never reached any agreement on a settlement. Eventually, plaintiff returned the baler to defendant, which resold it for $3,250. The record does not indicate what the parties' understanding was regarding the return of the baler or what disposition was made of the proceeds. Plaintiff brought this suit (labelled "rescission" but which the UCC calls "cancellation"), claiming damages for breach of warranty and unlawful trade practice. The trial court issued "findings" as follows:

"* * * The Court finds that there were misrepresentations made by defendant's agents, but that they were innocent. The parties entered into a sales agreement which, in bold print, excluded any prior warranties. The only interpretation that can reasonably be given to the disclaimer is that express warranties are excluded, and there is nothing in the sales agreement representing or warranting the year or condition of the baler.

"The plaintiff's second count [sic] does not fall under ORS 646.605, et seq. *See Searle v. Exley Express,* 278 Or 535 (1977).

"* * * * * *."

The sales agreement in this case is a form "Retail Installment Contract - Security Agreement" and contains the following clause:

"WARRANTIES: The following applies where permitted by law: THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS ON THE ABOVE GOODS AND NO OTHER WARRANTIES EXCEPT AS PROVIDED IN THE PURCHASE ORDER FOR SUCH GOODS, which purchase order shall be deemed a part of this agreement."

It appears from the record that no purchase order or other document was signed by the parties. No representation of the year of manufacture or condition of the baler is contained in the security agreement.

■        Plaintiff first argues that the representation as to the baler's age rises to the level of an express warranty, a point not decided by the trial court in this instance. We hold that it does.

■ ■        ORS 72.3130(1) defines express warranty as:

"* * * * *

"(a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain * * *.

"(b)    Any description of the goods which is made part of the basis of the bargain * * *.

"* * * * *."

The representation that the baler was only two years old and had been used only one year is a statement of fact material to the bargain in view of plaintiff's express criterion that the baler be newer than his former machine. It is an important factor also in that a newer model is likely to be in better condition than an older one. That the representation may have been innocently made in reliance on information supplied by a third party is immaterial; it is sufficient that the seller interjects the matter into the negotiations. *Autzen v. Taylor Lumber Sales, Inc.,* 280 Or 783, 788, 572 P2d 1322 (1977). The concept of fault is not relevant in a warranty context. *Valley Iron and Steel v. Thorin,* 278 Or 103, 110, 562 P2d 1212 (1977).

Whether the clause in the form security agreement is sufficient to negate the express oral warranty presents a closer question. In a non-UCC case involving the sale of a restaurant-lounge by a contract drafted specifically for the sale, the court held that a disclaimer clause, which stated that the restaurant and equipment were being sold "as is" and that the buyers were not relying on any representations not contained in the written agreement, excluded prior representations by the seller's representative and prevented plaintiffs from rescinding the contract for innocent misrepresentations. *Wilkinson v. Carpenter,* 276 Or 311, 554 P2d 512 (1976); *see also, Bodenhamer v. Patterson,*

278 Or 367, 563 P2d 1212 (1977). The rationale of *Wilkinson* is that the nonwarranty clause represents the agreement of the parties and sellers should be free to limit their liability for the innocent misrepresentations of their agents. 276 Or at 317.

■■ Different policies are operative in cases involving sales covered by the UCC. ORS 72.3160(1) provides:

> "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of ORS 72.2020 on parol or extrinsic evidence negation or limitation is inoperative to the extent that such construction is unreasonable."

As the comments following the uniform code section made clear, ORS 72.3160 strikes a balance between the legitimate interests of both the buyer and the seller. It protects the buyer from less-than-straightforward attempts by the seller to disclaim its express and implied warranties by requiring, among other things, that the disclaimer be conspicuously displayed. Disclaimers of express warranties are valid only to the extent they are reasonably consistent with the warranties expressed. Where the conflict is between a written disclaimer and other written assertions which are part of the contract, courts have generally held that the disclaimer is ineffective. *Woodruff v. Clark Co. Farm Bureau,* 153 Ind App 31, 286 NE2d 188, 200 (1972). Other relevant factors include: a) the point in the course of the sale at which disclaimer was attempted, *Woodruff v. Clark Co. Farm Bureau, supra* (disclaimer on receipts for chickens signed by buyer at time of delivery); *Whitaker v. Farmhand, Inc.,* 173 Mont. 345, 567 P2d 916 (1977)(disclaimer in erection manual of sprinkler system ineffective to negate representation of fact in seller's advertising brochure); b) the conspicuousness of the disclaimer; and c) whether the disclaimer constituted one of the "dickered" (*i.e.,* actually discussed and agreed upon) aspects of the agreement. *Mobile Housing, Inc. v. Stone,* 490 SW2d 611 (Tex Civ App 1973).

■ The question remains whether a conflict between an *oral* express warranty and a written disclaimer produces the same result. We conclude that it does and that the

disclaimer in this case must yield to the express warranty. ORS 72.3160(1) seeks to protect the seller "against false allegations of oral warranties" by the buyer. UCC 2-316, Comment 2 (1972). The section, however, contains no statement that a written disclaimer is, of itself, sufficient to nullify oral warranties. The method the code has chosen to achieve this protection is to make proof of express oral warranties in the face of a written agreement subject to the parol evidence rule. ORS 72.2020[3]; White & Summers, *Uniform Commercial Code,* 12-4, pp 354-5 (1972). That provision bars evidence of "contemporaneous oral agreements" which are inconsistent with the terms of a written contract, where the parties intend that contract as a final expression of their agreement. The rule will even prohibit proof of noncontradictory additional terms where the parties intend the written contract to be a complete expression of their agreement. ORS 72.2020(2). If evidence of an oral warranty is admissible, despite the parol evidence rule, there is no law or policy which suggests that oral warranties should be treated any differently than written warranties for purposes of applying ORS 72.3160(1). See *Mobile Housing, Inc. v. Stone, supra* (oral representation that mobile home buyers would receive would be "just like" model shown them actionable despite presence of written disclaimer clause in signed contract).

We need not decide in this case whether evidence of the oral warranty that the baler was a 1976 model was admissible in the face of the parol evidence rule because no such objection was raised by defendant at trial. Indeed, it conceded that the salesperson made the alleged statement. We conclude therefore that the express oral warranty is

---

[3] ORS 72.2020 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(1) By course of dealing or usage of trade as provided in ORS 71.2050 or by course of performance as provided in ORS 72.2080; and

"(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

inconsistent with the disclaimer and the disclaimer is ineffective as against that warranty. *Wilkinson v. Carpenter, supra,* does not dictate a contrary result, particularly given the "undickered" status of the disclaimer clause in this contract.

ORS 72.6080 provides in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

Neither party at trial or on appeal argued any points involving plaintiff's attempted revocation in this matter. We conclude that revocation was permissible and properly done in this case.

■ ■ Failure of the baler to comply with the express warranty constituted a non-conformity under ORS 72.6080. Plaintiff wanted a newer and presumably more reliable baler than the one he owned. That desire was communicated to the salesperson and became, as we have held, a basis of the bargain. ORS 72.3130(1)(a). When it was discovered that the baler purchased was as old as the one traded in, the value of that baler was impaired. This is borne out by the fact that plaintiff paid $8,000 for a baler not substantially larger than the one he traded, receiving $3,000 credit for the latter. When he returned the purchased baler, having put $1,400 into it in repairs, it was resold for $3,250.

The evidence showed that balers are sold according to model, not according to year of manufacture, and that it is virtually impossible to determine what year a particular

baler was made without checking the serial number. When plaintiff accepted delivery in June, 1978, he was understandably mistaken about its age. The mistake was discovered in July because of the abnormal amount of repair work that was required to keep the machine operational. He immediately approached defendant, which assured him that something would be worked out, even if it meant furnishing plaintiff a new John Deere baler. These negotiations continued through August, until plaintiff was informed the defendant was taking the formal position that it was not liable. Thereupon, plaintiff purchased a new baler elsewhere and stored the defective one over the winter. Defendant knew of plaintiff's actions. The record does not disclose when the baler was actually returned to defendant, but it was sometime in 1979. There was no evidence that the baler was in any worse shape at that time than when plaintiff purchased it. There was no evidence that any of the repairs were occasioned by plaintiff's negligence or factors other than the age of the machine itself. We conclude this is sufficient to show a proper and timely revocation of acceptance. The case is therefore remanded for entry of a decree cancelling the contract and for a determination of plaintiff's incidental and consequential damages resulting from the breach.

■     With respect to the second cause of action for unlawful trade practice, we find no merit in plaintiff's contentions. Plaintiff relies on ORS 646.608(1)(g), which makes it an unlawful trade practice for a seller of goods to represent them as meeting a specific standard or grade or as conforming to a particular style or model when in fact they do not. The scope of the provision is limited by ORS 646.605(7) which provides in part:

> " 'Real estate, goods or services' means those which are or may be obtained primarily for personal, family or household purposes * * *."

Plaintiff argues that the baler in question was bought for use on the family farm and that the hay was not a commercial crop, but was raised only to feed plaintiff's cattle. There was no evidence to support the allegation that hay balers are goods "customarily bought by a substantial number of purchasers for personal, family or household uses * * * ," as *Searle v. Exley Express,* 278 Or 535, 540, 564

P2d 1054 (1977) interpreted the statute to require, nor is it a fact of such "general notoriety" that we can take judicial notice of it. ORS 41.410. The baler was used in plaintiff's family cattle business. It is immaterial that the hay crop was an incident rather than an object of that business.

Reversed and remanded with instructions.