Argued and submitted June 25, affirmed November 10, 1982

CRUME et ux,
*Appellants,*
*v.*
FORD MOTOR COMPANY et al,
*Respondents.*

(No. A8007-03775, CA A22619)

653 P2d 564

Kit A. Jensen, Portland, argued the cause for appellants. With him on the briefs were Joel De Vries, and Gilbertson, Brownstein, Sweeney, Kerr & Grim, Portland.

Frank M. Parisi, Portland, argued the cause for respondents. With him on the brief were John M. Berman, John W. Weil, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs are cattle ranchers who bought a flatbed truck from defendant Francis Ford, Inc. (Francis). The truck was manufactured by defendant Ford Motor Company (Ford). Plaintiffs seek to revoke acceptance as to Francis under the Uniform Commercial Code (UCC), ORS 71.1010 to 79.5070, and to obtain damages from Ford Motor Company for its failure to comply with the Magnuson-Moss Warranty Act. 15 USC § 2301 *et seq.* At the close of plaintiffs' case, the trial court granted both defendants' motions for directed verdicts and entered judgment for defendants. Plaintiffs appeal; we affirm.

Plaintiffs had contacted several Ford dealers in an effort to purchase a truck. A salesman at Francis suggested that plaintiffs look at a truck another dealer had in stock. Plaintiffs examined that truck and asked Francis to obtain it for sale to them, which Francis did. Plaintiffs purchased the truck in September, 1978. Francis expressly disclaimed all warranties, express or implied, and Ford warranted to repair any defective part during the first 12 months of operation.

Plaintiffs noticed several defects immediately, the predominant one being a howling noise coming from the rear end. They took the truck to an authorized dealer other than Francis for repairs on three occasions in October and November, 1978, and in February, 1979, but by March, 1979, that dealer had not been able to repair the truck to plaintiffs' satisfaction. Plaintiff Paul Crume then went back to Francis in Portland to discuss the situation. A Francis salesman agreed to arrange for repairs at another dealership, but the arrangements were never made. In August, 1979, plaintiffs decided to revoke acceptance. Francis would not accept return of the truck, whereupon plaintiffs left it on the lot. Francis called plaintiffs a few weeks later, telling them that the repairs had been completed and that the truck was ready for them. Plaintiffs responded that they had revoked acceptance and did not want the truck back. Because Francis refused to acknowledge plaintiffs' revocation, plaintiff Paul Crume drove it to another dealer in Eugene and ultimately sold it through that dealer.

The relevant facts of this case are substantially the same as those in *Clark v. Ford Motor Co.,* 46 Or App 521, 612 P2d 316 (1980), in which this court held that a buyer may not revoke acceptance as to the dealer where the dealer has disclaimed all warranties and the buyer in fact got the vehicle he bargained for. Because there was no "nonconformity," ORS 72.6080,[1] revocation of acceptance was not authorized. Here, plaintiffs advance an argument which was not made in *Clark.* They point out that under ORS 72.7190,[2] if a remedy fails of its essential purpose, resort may be had to other remedies provided in the code. They argue that because Ford's limited warranty was ineffective to effect repair of the truck, it failed of its essential purpose and that other remedies under the code are therefore available. Among those remedies, they contend, "are the remedies available for breach of the implied warranty of merchantability." From that premise, they argue that there was evidence here that Francis breached that warranty and, therefore, that the truck did not conform to the contract, giving plaintiffs the right to revoke acceptance of the nonconforming goods. *See* ORS 72.6080, *supra,* n 1.

Some courts in other states have attempted to reach that result under the UCC in an effort to avoid what appears to be an unfair result. *See, e.g., Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz 596, 638 P2d 210 (1981); *Conte v. Dwan Lincoln-Mercury, Inc.,* 172 Conn 112, 374 A2d 144 (1976); *Moore v. Howard Pontiac-American, Inc.,*

---

[1] ORS 72.6080 provides in part:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

Under ORS 72.1060(2), "Goods * * * are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract."

[2] ORS 72.7190(2) provides:

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code."

492 SW2d 227 (Tenn App 1972); *cf. Ford Motor Co. v. Mayes,* 575 SW2d 480 (Ky App 1978) (buyer permitted to revoke acceptance as to manufacturer). The *Seekings* opinion comes closer than any of the others to making a persuasive case for the frustrated car buyer. However, the Arizona court fought the express provisions of the UCC; to reach the desired result, it was necessary for the court to say that, although the disclaimer of the implied warranty of merchantability precluded a breach of warranty claim, it did not avoid revocation of acceptance "if the vehicle does not conform to the representation that it can be made like new within a reasonable time." 638 P2d at 217. Although that rationale may be tempting, it is tantamount to saying that a seller may not disclaim all warranties, express and implied, which, in our opinion, is directly contrary to ORS 72.3160. Perhaps a seller should not be permitted to disclaim all warranties, but we believe the remedy is with the legislature. For example, the legislature may consider that the most appropriate solution is to permit revocation of acceptance (or the functional equivalent) from the manufacturer.

▆▆▆▆ · Here, as in *Clark,* the dealer disclaimed all warranties, express or implied. The only warranty was the limited one made by the manufacturer, not by the dealer. This truck conformed to the contract between plaintiffs and the dealer because plaintiffs got the vehicle that they had selected and had requested Francis to obtain for sale to them. If the limited remedy provided by the manufacturer failed of its essential purpose, that does not render the goods nonconforming under plaintiffs' contract with the dealer, absent a warranty of merchantability. The trial court properly directed a verdict for Francis.

▆▆▆▆ The trial court directed a verdict for defendant Ford on the ground that there was no evidence that the truck was a "consumer product," as it must be if plaintiffs are to recover under the Magnuson-Moss Warranty Act. 15 USC § 2310(d(1) (1976).[3] A "consumer product" is

---

[3] 15 USC § 2310(d)(1) provides:

"Subject to subsections (a)(3) and (e) of this section [relating to an informal dispute procedure not relevant here], a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any

"(1) * * * any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes * * *." 15 USC § 2301(1) (1976).

According to the regulations under the Magnuson-Moss Act, the definition of "consumer products" encompasses those products that are commonly used for consumer purposes, regardless of their actual use by the individual purchaser. *See* 16 CFR § 700.1(a) (1982).[4] We think the converse is also true: products that are not commonly used for consumer purposes are not transformed into consumer products because an individual occasionally uses them for personal or household purposes. *See Miller v. Hubbard-Wray,* 52 Or App 897, 630 P2d 880, *modified* 53 Or App 531, 633 P2d 1, *rev den* 292 Or 109 (1981) (construing a similar definition under ORS 646.605(7) in an action alleging an unlawful trade practice).

■ Both parties support their positions on this issue by reference to testimony regarding the actual use of this truck by various individuals. There is no evidence, however, relating to the use to which flatbed trucks are commonly put. It was plaintiffs' burden to establish that the truck was a consumer product. Plaintiff Paul Crume's testimony that he occasionally transported groceries in the truck when he took the truck to town on business was not sufficient to

---

obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief * * *."

A "consumer" is "a buyer * * * of any consumer product * * *." 15 USC § 2301(3) (1976).

[4] 16 CFR § 700.1(a) provides:

"The Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes. This definition includes property which is intended to be attached to or installed in any real property without regard to whether it is so attached or installed. This means that a product is a 'consumer product' if the use of that type of product is not uncommon. *The percentage of sales or the use to which a product is put by any individual buyer is not determinative.* For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." (Emphasis supplied.)

allow the jury to find that it was a consumer product as defined in the Act.

Affirmed.