Argued and submitted March 14, affirmed November 23, 1988, reconsideration denied January 13, petition for review denied February 14, 1989 (307 Or 405)

# DUYCK et al,
*Appellants,*

*v.*

# NORTHWEST CHEMICAL CORPORATION,
*Respondents.*

## (86-0379C; CA A45641)

764 P2d 943

Thomas J. Moore, Hillsboro, argued the cause for appellants. With him on the briefs was Brink, Moore, Brink & Peterson, Hillsboro.

Richard S. Gleason, Portland, argued the cause for respondents. With him on the brief were Charles F. Adams, and Stoel, Rives, Boley, Jones & Grey, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiffs sought damages, on a breach of warranty theory, for reduced blueberry crop yield in 1983, which allegedly resulted from application of the insecticide lannate L (lannate). Defendants, Northwest Chemical Corporation (Northwest), seller, and Dupont, manufacturer of lannate, moved for summary judgment. Northwest argued that it made no warranty of merchantability or fitness for a particular purpose and that the goods were sold "as is," subject only to the manufacturer's warranty on the label. Dupont argued that it was not liable, because the limitation of damages clause on the label excludes liability for consequential damages. The trial court granted defendants' motions.

On appeal, we examine the record to determine whether triable issues of fact exist which would preclude summary judgment. *Forest Grove Brick v. Strickland,* 277 Or 81, 559 P2d 502 (1977); *City of Lake Oswego v. Grimm's Fuel Co.,* 34 Or App 67, 70, 577 P2d 1360 (1978). We review the record in the light most favorable to the party opposing the motion. *Santilli v. State Farm,* 278 Or 53, 562 P2d 965 (1977). We conclude that the trial court did not err in holding that there were no genuine issues of material fact and that defendants were entitled to judgment as a matter of law.

Plaintiffs are experienced farmers who own and operate a large commercial farm and packing plant. They are licensed pesticide dealers and applicators. As such, they buy pesticides on a wholesale basis and sell those chemicals to other farmers, as well as provide pesticide application services. In 1983, plaintiffs asked Rogers, a salesperson for Northwest, about purchasing marlate, a chemical plaintiffs had previously used on their blueberry crops to control insects. Rogers told plaintiffs that marlate was not available, but suggested lannate. Rogers reviewed the lannate label with plaintiffs. Plaintiffs were concerned about the effect of lannate on bees, because bees are important for the pollination of blueberries. Plaintiffs examined the Dupont Agrichemical Manual, regarding the use of lannate, as well as the chemical's label. They also spoke with their beekeeper and a pesticide consultant, Collins. Collins also reviewed the Dupont manual as well as the "Pacific Northwest Handbook," a publication of Washington, Oregon and Idaho universities, regarding pesticide

use. Plaintiffs were advised by Rogers, the Dupont manual, the lannate label, and Collins, that lannate should not be applied while bees were actively visiting the area. Invoices in the record show that plaintiffs purchased lannate from Northwest seven times during the spring and summer of 1983. They also show that plaintiffs had purchased lannate from Northwest the year before.

Plaintiffs' applied lannate in April, 1983, during the night, when no bees were foraging. About 15 percent of the blueberry crop was in bloom at that time. Lannate was also applied twice after the crop had finished blooming. Plaintiffs' blueberry crop yield was significantly lower that year. Plaintiffs claim that lannate caused the bees to repel and some to die, resulting in poor pollination and, ultimately, poor yield.

With regard to Northwest, plaintiffs argue that Rogers gave an oral express warranty that lannate was safe for use on blueberries, and that the warranty conflicts with the disclaimer in Northwest's invoice, thereby negating it. ORS 72.3160(1);[1] *Miller v. Hubbard-Wray,* 52 Or App 897, 630 P2d 880, *rev den* 292 Or 109 (1981). Defendants contend that any warranty given by Rogers was the same as that on the lannate label and is thus consistent with the provisions in Northwest's invoice.

The invoice states:

"SELLER IS A DISTRIBUTOR OF PRODUCTS MANUFACTURED AND WARRANTED BY OTHERS, ACCORDINGLY THE GOODS SOLD HEREUNDER ARE FURNISHED 'AS IS' BY SELLER AND ARE SUBJECT ONLY TO THE MANUFACTURER'S WARRANTY INCORPORATED ON THE LABELS OF THESE SPECIFIC PRODUCTS.

"**SELLER MAKES NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**"

---

[1] ORS 72.3160(1) provides, in pertinent part:

"Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of ORS 72.2020 on parol or extrinsic evidence negation or limitation is inoperative to the extent that such construction is unreasonable."

The lannate label provides:

## "NOTICE OF WARRANTY

"Dupont warrants that this product conforms to the chemical description on the label thereof and is reasonably fit for the purposes stated on such label only when used in accordance with the directions under normal use conditions. It is impossible to eliminate all risks inherently associated with the use of this product. Crop injury, ineffectiveness, or other unintended consequences may result because of such factors as weather conditions, presence of other materials, or the manner of use or application all of which are beyond the control of Dupont. In no case shall Dupont be liable for consequential, special or indirect damages resulting from the use or handling of this product. All such risks shall be assumed by the buyer. DUPONT MAKES NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE NOR ANY OTHER EXPRESS OR IMPLIED WARRANTY EXCEPT AS STATED ABOVE.

## "ENVIRONMENTAL HAZARDS

"* * * * *

"This product is toxic to bees exposed to direct application. Do not apply this product while bees are actively visiting the treatment area. Time applications to coincide with periods of minimum bee activity."

There is no evidence that Rogers' representation conflicts with the language in Northwest's invoice. Plaintiffs' son, Jeffery Duyck, testified at deposition that, when he asked Rogers for an alternative to marlate, Rogers suggested lannate and said that "it could be applied safely to blueberries at a time when bees were not actively foraging in the fields." Furthermore, plaintiff, Lloyd Duyck, testified that Rogers reviewed the product's label with them and informed them that certain precautions must be followed when using lannate around bees, but that lannate was safe if applied under proper conditions. He testified that he could not remember Rogers making any representations that were inconsistent with the information on the label.

■ ■     Plaintiffs also contend that the disclaimer in Northwest's invoice is not conspicuous. Under ORS 72.2010(10), "[a] term is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. * * * Language in the body of a form is 'conspicuous' if it is in

larger or other contrasting type or color." Here, the provision in question appears in capital letters on the face of a one-page contract of sale, with critical portions printed in boldface. The disclaimer language unequivocally directs the buyer to the manufacturer's label as the sole source of all warranties. The provision in question is conspicuous as a matter of law. ORS 72.2010(10); *see also Atlas v. Moore Dry Kiln Company of Oregon,* 38 Or App 111, 589 P2d 1134 (1979).[2]

■        With regard to Dupont, plaintiffs assert that their claim is one for direct damages and thus does not fall within the exclusion of liability for consequential damages in the lannate label. Defendants characterize plaintiffs' claim as one for lost profits, which are generally considered to be consequential damages. White and Summers, *Uniform Commericial Code* 391, § 10-4 (2d ed 1984).

ORS 72.7140(2) provides the general measure of damages in breach of warranty claims:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

ORS 72.7150(2) defines consequential damages as:

"(a)   Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b)   Injury to person or property proximately resulting from any breach of warranty."

Consequential damages, as opposed to direct damages, do not

---

[2] Plaintiffs also assert several arguments against Northwest for the first time on appeal. They contend that the "as is" statement in the invoice cannot be applied because "we do not know when the invoice was delivered to plaintiffs" and because there was a complete oral agreement to sell and purchase lannate before the invoice was delivered. They also argue that there is an issue of fact whether the invoice expressed the parties' complete agreement. Finally, plaintiffs argue that Northwest's disclaimer is unconscionable and that, under ORS 72.3020(2), "it was incumbent upon the lower court to afford the parties an opportunity to present evidence to aid the court in making a determination as to unconscionability." Because plaintiffs did not raise those arguments below, we do not address them now. *See Engelking v. Boyce,* 278 Or 237, 241-242, 563 P2d 703 (1977); *Travelers Indemnity Company v. American Ins.,* 278 Or 193, 199, 563 P2d 684 (1977).

arise directly according to the usual course of things from the breach itself; rather, they occur as a consequence of special circumstances known or reasonably supposed to have been contemplated by the parties when the contract was made. In other words, ORS 72.7150(2) includes loss resulting from general or particular requirements which Dupont had reason to know about at the time of the contracting. *See,* White and Summers, *Uniform Commercial Code* § 10-4 (2d ed 1984).

Here, the parties knew about the importance of bees for the pollination of blueberries. Dupont warranted that lannate was reasonably fit to use on blueberries if it was applied while bees were not actively visiting the area. Damage resulting from a breach of that warranty would be consequential and fall within Dupont's exclusion.

■ Plaintiffs also argue that Dupont's exclusion of consequential damages[3] is invalid as a matter of law because it is inconsistent with other language on the lannate label that creates express warranties. They contend that the provisions in the label cannot be reconciled and that there is at least a question of fact as to the intent of the language. They rely on *Miller v. Hubbard-Wray, supra.* In so doing, plaintiffs fail to distinguish between warranty disclaimers and limitations on liability. *Miller* involved a conflict between an express warranty and a warranty disclaimer, the question in such cases being what warranties the seller gave. Resolution of those conflicts is governed by ORS 72.3160, while limitations on liability are addressed by ORS 72.7190. The distinction was well characterized in *FMC Finance Corp. v. Murphree,* 632 F2d 413, 420 (5th Cir 1980):

> "The consequential damage remedy is separate from creation of liability by a warranty. Warranty disclaimer is a defense to the existence of a cause of action, while the consequential damage limitation merely restricts remedies once the breach has been established."

*See also,* White and Summers, *Uniform Commercial Code* 471,

---

[3] That exclusion appears on the lannate label under the heading **"NOTICE OF WARRANTY,"** set out earlier in this opinion. It reads:

"In no case shall Dupont be liable for consequential, special, or indirect damages resulting from the use or handling of this product. All such risks shall be assumed by the buyer."

§ 12-11 (2d ed 1984). Here, the existence of an express warranty is not disputed. Rather, the question is, if an express warranty was created and breached, whether the limitation of liability is effective and excludes plaintiff's claim.

■     Limitations excluding liability for consequential damages are addressed by ORS 72.7190(3) which provides:

> "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."

Plaintiffs argue that the exclusion should not be given effect because it was not conspicuous. The exclusion appears in the provision under the boldface heading, **"NOTICE OF WARRANTY."** That provision concludes with a disclaimer of warranties which is printed in contrasting capital letters. That heading and disclaimer are conspicuous as a matter of law. ORS 71.2010(10). Further, the warranty notice and disclaimer language would cause a reasonable prudent person engaged in business to read the language included in that section carefully. *See Atlas Mutual Ins. v. Moore Dry Kiln Co., supra.* Moreover, plaintiffs do not assert facts showing that they were unaware of the exclusion.[4]

     Affirmed.

---

[4] Plaintiffs also argue that Dupont's exclusion of liability for consequential damages is unconscionable because it "fails its essential purpose," leaving plaintiffs without any remedy, and that the allocation of risk is so one-sided as to be oppressive. Under the facts of this case, we find no merit to those arguments.