Argued and submitted July 16, affirmed September 11, 2002

Richard YOUNG,
dba Young Mechanical Services, Inc.,
*Plaintiff,*

*and*

YOUNG MECHANICAL SERVICES, INC.,
an Oregon corporation,
*Respondent,*

*v.*

CONTINENTAL CRANE & RIGGING CO.,
an Oregon corporation,
*Appellant.*

9904-04180; A111124

53 P3d 465

Christine Coers-Mitchell argued the cause for appellant. With her on the briefs were Thomas W. Brown and Cosgrave Vergeer Kester LLP.

Lisa E. Lear argued the cause for respondent. With her on the brief were Peter J. Viteznik and Bullivant Houser Bailey PC.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals from a judgment awarding damages to plaintiff in this negligence action arising from plaintiff's lease from defendant of a crane and an operator to install an overhead crane system at a manufacturing plant. While the operator was lifting a box girder with the crane, the girder fell and was damaged. After the trial court ruled that an indemnity provision contained in a "rental agreement" signed by plaintiff was unenforceable, the jury returned a verdict finding plaintiff 49.5 percent negligent and defendant 50.5 percent negligent. The court entered a judgment for plaintiff based on that verdict.

Defendant assigns error to the trial court's determination, based on three independent grounds, that the indemnity provision was unenforceable. On review for errors of law, ORS 71.2010(10), we conclude that the provision was unenforceable because it was inconspicuous and was not otherwise bargained for or brought to plaintiff's attention. Accordingly, we affirm without considering the alternative grounds for the trial court's decision.

Konecranes, Inc. (KCI) hired plaintiff to install several pieces of heavy machinery, including a 15-ton overhead crane, at a facility owned by Welded Tube, Inc. Plaintiff needed a mobile crane to lift the overhead crane and a girder into place. Plaintiff contacted defendant about the job, and the parties agreed that defendant would supply the crane, an operator, and a sling to lift the girder into position.

Sometime during the course of the project, defendant's employee Louis Novak presented plaintiff's assistant supervisor Richard Swenson with a document entitled "STANDARD SHORT TERM CRANE RENTAL AGREEMENT" (the document).[1] The document was a preprinted form on light pink paper. The front side of the document included spaces for recording information about the lessee, the types of equipment rented, and the number of hours involved in the project.

---

[1] Although Swenson signed the document, neither he nor Novak could recall whether it was signed before the accident.

Between the sections for the lessee's information and the time records is a statement printed in red letters that are smaller than the ones used in the title that reads "THE TERMS AND CONDITIONS GOVERNING THIS RENTAL AS DESCRIBED ON THE REVERSE SIDE ARE UNDERSTOOD AND AGREED TO." Printed immediately below that statement and to the left, the instruction "HAVE SIGNED AT START OF JOB" was set out. On the same line and to the immediate right of that provision are spaces for the date, the lessee's name, and a space for an authorized signature. That portion of the form is dated, but the lessee's name is left blank, and all that appears on the authorized signature line are Swenson's initials. Below the area for listing the types of equipment rented and the period of use the provision "THIS SECTION MUST BE COMPLETED EVERY DAY" is set out. Finally, a space for recording the occurrence of an accident is located near the bottom of the front page along with another box for the lessee's signature. Swenson signed the form in that signature box.

At the top of the back of the document is the heading **"TERMS AND CONDITIONS."** Below that heading are 13 paragraphs, eight of them numbered, all in light ink. The second numbered paragraph provides for indemnification and provides:

> "Lessee agrees that the equipment and all persons operating such equipment, including Lessor's employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lessor, its employees and agents harmless from all claims for death or injury to persons, including Lessor's employees, and from all loss, damage or injury to property, including the equipment, arising in any manner out of Lessee's operation. Lessee's duty to indemnify hereunder shall include all costs or expenses arising out of all claims specified herein, including all court and/or arbitration costs, filing fees, attorney's fees and costs of settlement.
>
> "Lessee shall not be required to indemnify Lessor for its sole negligence, but Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees, hereunder shall be limited to the amount of Lessor's liability insurance."

After the accident, plaintiff's insurer satisfied KCI's consequential damages claim. Then, using a loan receipt, plaintiff brought this action for negligence to recover from defendant the damages its insurer paid. The issues of negligence and damages were tried to a jury, and the question of whether the indemnity provision was enforceable was submitted to the court. The court determined that the indemnity provision was not enforceable because (1) it was not conspicuous; (2) it was ambiguous; and (3) its enforcement would be unconscionable.

The court explained its conclusion that the provision was not conspicuous:

"Then you turn it over and look at the back and, sitting here under very good lighting in a very calm atmosphere, the Court, who has good glasses, finds it difficult to read what's on the back, and that it is—the ink is so light that it is difficult for the Court to imagine that it wasn't intended to make it difficult to read on pink paper. And for that reason that it is inconspicuous and obscure."

Later, the court further explained that, although language on the front of the form refers to the provisions on the back, the faint type color on the back against the light pink background "makes the print stand out less and in the light ink, it is not apparent and, in fact, it is obscure."

Defendant assigns error to the trial court's conclusion that the indemnity provision is not conspicuous and, thus, is unenforceable, which conclusion led the court to enter judgment for plaintiff even though the jury found that plaintiff's loss did not arise from defendant's sole negligence.

■ The Uniform Commercial Code (UCC) governs the parties' lease transaction. *See* ORS 72A.1020. Unless the indemnity provision was specifically bargained for, to be enforceable it must have been brought to plaintiff's attention or must be conspicuous. *Anderson v. Ashland Rental, Inc.*, 122 Or App 508, 510, 858 P2d 470 (1993). Defendant does not contend that the parties specifically bargained for the provision or that defendant brought it to plaintiff's attention. Accordingly, defendant could not enforce its terms unless it is conspicuous. *Id.*

ORS 71.2010(10) provides that a term in a contract governed by the UCC is conspicuous when

> "it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court."

In determining whether the indemnity provision in this case is conspicuous, several of this court's decisions inform our inquiry.

In *Atlas Mutual Ins. v. Moore Dry Kiln*, 38 Or App 111, 589 P2d 1134 (1979), the plaintiff sought indemnity for insurance benefits it had paid for a fire-damaged kiln that its insured had purchased from the defendant. The defendant contended that the claim was barred by a limitation-of-liability provision in the underlying sales contract. The plaintiff argued that the provision was inconspicuous and, therefore, unenforceable. We held that the provision was conspicuous because it was located in the middle of a one-page contract, not "hidden in small print" within a long document, and because it began with a boldfaced disclaimer of all warranties. *Id.* at 114.

In *Anderson*, a house painter rented scaffolding from the defendant. The two-page rental contract included a disclaimer on the first page providing that the defendant would not be liable for any damages suffered by the painter that resulted from the nonperformance or faulty performance of the rented equipment. The painter brought a negligence action after he was injured when the scaffolding tipped. In holding that the disclaimer was not conspicuous, we relied on two categories of factors. First, the front page of the contract used "various attention getting devices," including six different font sizes, boldface type, capital letters, red type, and reverse lettering. Second, the back page was printed in type so light that it was barely legible. Even though the disclaimer was located under a caption that was in boldface type of a different color, its visual impact was minimized by the adjacent

captions printed in bright red type, and the body of the disclaimer was not printed in a larger or other contrasting type or color so as to make it conspicuous.

Significant for present purposes was our rejection of the defendant's argument that the disclaimer was conspicuous because at the bottom of the front page, printed in reverse lettering, it directed the lessee to "READ BOTH SIDES BEFORE SIGNING." We held that even if that instruction was conspicuous, it failed to remedy the inconspicuousness of the disclaimer itself. *Anderson*, 122 Or App at 511. We concluded that, because the disclaimer was one of eight sections on the back of the form, all printed in the same faint, barely legible type, with identical headings, the disclaimer "fell far short of the ORS 71.2010(10) criteria." *Id.*

To similar effect is *Seibel v. Layne & Bowler*, 56 Or App 387, 641 P2d 668, *rev den* 293 Or 190 (1982). There, we declined to enforce warranty disclaimers in a contract for the sale and installation of a pump for use in an irrigation system on the ground that the disclaimers were inconspicuous. They were included among terms covering numerous aspects of the parties' relationship, the terms covered approximately three-quarters of the page, the type was small, and the paragraphs were printed without indentation or extra spacing between them. *Id.* at 391. Because the disclaimers were "set out no differently than the other terms," we held that they were inconspicuous under the principle that " 'a provision is not conspicuous when there is only a slight contrast with the balance of the instrument.' " *Id.* at 390-91 (quoting James J. White and Robert S. Summers, *Uniform Commercial Code* § 12-5, 441 (2d ed 1980)).

In *Duyck v. Northwest Chemical Corp.*, 94 Or App 111, 764 P2d 943 (1988), *rev den* 307 Or 405 (1989), we upheld a limitation of liability provision on a can of pesticide. The provision appeared under a boldface heading "**NOTICE OF WARRANTY**" and was printed in contrasting capital letters. We concluded that both the warranty notice and the limitation of liability provision would have caused a reasonably prudent person to read the language included in that section carefully. *Id.* at 118.

Finally, in *Northwest Pine Products v. Cummins Northwest, Inc.*, 126 Or App 219, 868 P2d 21 (1994), the defendant installed a compressor in the plaintiff's wood chipper. The compressor later exploded. The plaintiff sought lost profits from the defendant for the resulting down time. The defendant's invoice contained two different disclaimers on the reverse side. The first, which we deemed inconspicuous, was located under the heading "Warranty" and provided that, except as stated, there were no warranties with respect to any materials or services. The second disclaimer limited the defendant's damage exposure to the cost of correcting or replacing defective parts. We rejected the plaintiff's argument that the inconspicuousness of the first disclaimer also infected the second. We concluded that the second disclaimer was conspicuous because its title was set off from the surrounding text in larger boldface print. *Id.* at 222-23.

■ The circumstances here more closely resemble those in *Anderson* and *Seibel* than those in *Atlas Mutual Ins., Duyck,* or *Northwest Pine Products.* The document is a preprinted form on light pink paper with the relevant paragraph, along with 11 others, printed on the back page in very light ink. Unlike in *Atlas Mutual Ins., Duyck,* and *Northwest Pine Products,* the indemnity provision does not stand out from the other provisions on the back of the form. It is not set out in contrast to those provisions either in font size, type, color, or capitalization. As in *Anderson,* although the provisions on the reverse side are referred to on the front page, the conspicuousness of that reference does not remedy the obscurity of the indemnity provision itself. The fact that Swenson's initials appear on the front page below the reference to terms and conditions on the reverse side does not alter that conclusion. The indemnity provision is not conspicuous within the meaning of ORS 71.2010(10).

Affirmed.